```
          UNITED STATES DISTRICT COURT
           MIDDLE DISTRICT OF FLORIDA
                 TAMPA DIVISION
```

FIRST WATCH RESTAURANTS,
INC.,

    Plaintiff,

v.                              Case No. 8:20-cv-2374-VMC-TGW

ZURICH AMERICAN INSURANCE
COMPANY,

    Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to the Motion to Dismiss for Failure to State a Claim (Doc. # 19) filed by Defendant Zurich American Insurance Company on December 4, 2020. Plaintiff First Watch Restaurants, Inc. responded on January 5, 2021. (Doc. # 25) Zurich replied on January 19, 2021. (Doc. # 28). For the reasons set forth below, the Motion is granted.

### I. Background

First Watch operates a chain of breakfast, brunch, and lunch restaurants with over four hundred locations in twenty-nine states. (Doc. # 1 at ¶¶ 9-11). Like many establishments, First Watch suspended business operations in 2020 due to COVID-19. (Id. at ¶ 37). Specifically, First Watch explains

that governors in all fifty states issued executive orders prohibiting restaurants from offering on-site food consumption. (Id. at ¶¶ 18-23).

As a result of these orders, First Watch claims it has suffered the "direct physical loss of the ability to operate the insured properties," which in turn led to loss of business income and extra expenses. (Id. at ¶¶ 37-39).

First Watch sought coverage for these losses and expenses from Zurich, from whom it had purchased an insurance policy effective from March 1, 2020, through March 1, 2021. (Id. at ¶ 24). First Watch sought coverage under Section IV and Section V of its policy. (Id. at ¶¶ 38-39). Section IV, the time element section, states:

> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location. **The Suspension must be due to direct physical loss of or damage to Property** (of the type insurable under this Policy other than Finished Stock) caused by a Covered Cause of Loss at the Location, or as provided in Off Premises Storage for Property Under Construction Coverages.

(Doc. # 1-4 at 28) (emphasis added).

Section V, the special coverages section, states:

> The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this

2

> Policy, resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of civil or military authority that **prohibits access** to the Location. That order **must result from a civil authority's response to direct physical loss of or damage** caused by a Covered Cause of Loss to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the **physical loss or damage** occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

(Id. at 34-35) (emphasis added).

Zurich denied coverage, stating that the presence of COVID-19 did not constitute a direct physical loss or damage. (Doc. # 1 at ¶¶ 40-42). Zurich also told First Watch that any damage from COVID-19 would be excluded under the policy's contamination exclusion, which states:

> The following exclusions apply unless specifically stated elsewhere in this Policy:
>
> Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

(Id.; Doc. # 1-4 at 25).

In response, First Watch filed the instant action requesting a declaratory judgment that its business losses and extra expenses were covered by the policy (Count I) and alleging breach of contract based on Zurich's denial of its claims (Count II). (Doc. # 1 at ¶¶ 47-53).

Zurich now moves to dismiss both counts of the complaint for failure to state a claim. (Doc. # 19). First Watch responded (Doc. # 25), Zurich replied (Doc. # 28), and the Motion is ripe for review.

## II. Legal Standard

### A. Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

> will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### B. Florida Contract Law

Although First Watch operates in several states, Zurich argues that Florida law applies (Doc. # 19 at 15) and First Watch has briefed the issue in accordance with Florida law. (Doc. # 25 at 5). The complaint alleges, and the policy reflects, that the policy was entered into, issued, and covers property in Florida. (Doc. # 1 at ¶ 8; Doc. # 1-4 at 15).

"Florida applies its own laws to interpret policies which are purchased and delivered in that state," therefore the Court agrees that Florida law applies. Trans Caribbean Lines, Inc. v. Tracor Marine, Inc., 748 F.2d 568, 570 (11th Cir. 1984); see also Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1059 (11th Cir. 2007) (noting that generally,

5

the lex locus contractus of an insurance policy is the state where the insured executed the insurance application).

Under Florida law, interpretation of an insurance contract is a matter of law to be decided by the court. Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir. 1985). Florida law requires that the plain and unambiguous language of the policy controls. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003). Only if the language is susceptible to more than one reasonable interpretation, "one providing coverage and the other limiting coverage," will the court resolve the ambiguity, construing the policy to provide coverage. Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 965 (11th Cir. 2014) (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005)). However, interpreting the contract language is necessary, and the act of interpreting does not impute ambiguity to its terms. Id. (citing Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So. 2d 26, 31 (Fla. 2d DCA 2004)).

### III. **Analysis**

Zurich moves to dismiss both counts of the complaint, arguing that "all relevant coverages under the [p]olicy require 'direct physical loss of or damage [to property].'"

6

(Doc. # 19 at 16). According to Zurich, First Watch fails to plead any concrete damages — it only pleads an "inability to use its restaurants due to COVID-19-related orders," which is a "purely economic injury." (Id. at 8).

First Watch responds that the Zurich policy language is unique compared to other business interruption clauses, and the wording is sufficiently ambiguous to require the Court to construe coverage. (Doc. # 25 at 7, 10, 15). Additionally, First Watch argues that the contamination exclusion is inapplicable. (Id. at 17).

Both the declaratory judgment claim (Count I) and the breach of contract claim (Count II) turn on whether First Watch's losses were covered by the insurance policy, therefore the Court addresses them simultaneously. For the reasons below, the Court agrees with Zurich that First Watch fails to show coverage under any provision of the policy.

### A. Section IV: Time Element Coverages Section

The time element section of First Watch's policy states that to qualify for coverage, a suspension of business operations "must be due to direct physical loss of or damage to Property." (Doc. # 1-4 at 28). Importantly, First Watch does not allege that COVID-19 was actually present at any of its restaurants. (Doc # 1 at ¶ 43) (admitting "there is no

7

direct evidence that any . . . insured locations were closed due to active contamination of the virus"). Instead, First Watch claims it experienced direct physical loss "due to inability to operate the restaurants as intended." (Id.).

This Court and others in the Eleventh Circuit have "overwhelmingly rejected [this] argument." See Rococo Steak, LLC v. Aspen Specialty Ins. Co., No. 8:20-cv-2481-VMC-SPF, 2021 WL 268478, at *4 (M.D. Fla. Jan. 27, 2021). In Rococo Steak, this Court examined substantially the same insurance policy and found that under binding Eleventh Circuit precedent, "a decrease in business due to COVID-19 is a purely economic loss, not the kind of physical loss contemplated by insurance policies." Id. (citing Mama Jo's Inc. v. Sparta Ins. Co., 823 F. App'x 868, 879 (11th Cir. 2020)). Other courts have routinely come to the same conclusion. See Edison Kennedy, LLC v. Scottsdale Ins. Co., No. 8:20-cv-1416-WFJ-SPF, 2021 WL 22314, at *5 (M.D. Fla. Jan. 4, 2021) (listing cases).

First Watch argues that the Court should break from this pattern because its policy is uniquely worded in a way that creates ambiguity, and that "damage caused by a Covered Cause of Loss" must be interpreted as "something different than 'direct physical loss of.'" (Doc. # 25 at 8). But Florida

8

courts have examined virtually identical policies and held that "direct physical" modifies both "loss" and "damage"; therefore, to be covered, an interruption in business "must be caused by some *physical problem* with the covered property." Malaube, LLC v. Greenwich Ins. Co., No. 20-22615-CIV, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020).

Additionally, First Watch's policy shares the same operative language as the policy in Rococo Steak. Both policies unambiguously required "direct physical loss of or damage to property" to qualify for coverage. 2021 WL 268478, at *1. Accordingly, despite slight differences between the First Watch policy and the policy in Rococo Steak, the Court finds that the same result is warranted. Like the restaurant in Rococo Steak, First Watch's business losses due to COVID-19 orders are economic losses, not the kind of physical loss or damage contemplated by the policy. Id. at *5. First Watch thus fails to allege coverage under the time element section.

### B. Special Coverages Section

First Watch fails to show coverage under the special coverages section for the same reason. The special coverages section is triggered when a civil or military order "prohibits access" to the insured location. (Doc. # 1-4 at 34-35). Similar to the time element section, the special coverages

9

section requires the order to be a "response to direct physical loss of or damage . . . to property." (Id.).

As discussed above, under Eleventh Circuit precedent, a decrease in business is not direct physical loss or damage. First Watch thus fails to show how the orders were in response to physical loss or damage from COVID-19. Rococo Steak, 2021 WL 268478, at *5.

Additionally, this Court examined a similar provision in Rococo Steak, and found that access is not prohibited where customers can still purchase delivery or take-out. Id. at *6. Here, the governors' orders did not completely cut off access to the restaurant because First Watch was permitted to offer take-out and delivery. (Doc. # 1 at ¶ 15). Merely restricting access, without completely prohibiting access, does not trigger coverage under these sorts of provisions. Rococo Steak, 2021 WL 268478; see also Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co., No. 1:20-CV-22833, 2020 WL 6392841, at *5 (S.D. Fla. Nov. 2, 2020) (dismissing with prejudice two cases in which the insured sought coverage under a civil authority provision, finding that access was not prohibited where take-out and delivery were available).

First Watch thus fails to allege either damage to surrounding property or that the governors' actions

10

prohibited access to the restaurant. Therefore, First Watch fails to show coverage under the special coverages provision.

Since First Watch cannot show coverage under either provision, the Court does not address whether the contamination exclusion, or any exclusion, is applicable. (Doc. # 25 at 17-18).

**C. Conclusion**

Although the Court is sympathetic to First Watch's losses, "there is simply no coverage [for loss of business due to COVID-19] under policies if [the policies] require 'direct physical loss of or damage' to property." Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000, No. 8:20-cv-1605-JSM-AEP, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020).

Here, "considering the plain language of the [policy] . . . the underlying litigation is unequivocally excluded from coverage." Zodiac Group, Inc. v. Axis Surplus Ins. Co., 542 F. App'x 844 (11th Cir. 2013). Therefore, First Watch's claims are properly dismissed under Rule 12(b)(6). Furthermore, it appears to the Court that any amendment would be futile based on the facts and circumstances of this case. As such, the dismissal is with prejudice. See Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) ("The district court,

11

however, need not 'allow an amendment . . . where amendment would be futile.'" (citation omitted)).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Zurich American Insurance Company's Motion to Dismiss (Doc. # 19) is **GRANTED.**

(2)  This case is dismissed with prejudice.

(3)  The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 4th day of February, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE